## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

BRANDON CLEVELAND AND ISIAH JACKSON,

                             Plaintiffs,

                -vs-

CAPLAW ENTERPRISES,

                             Defendant.

DECISION AND ORDER

05-CV-6016 CJS

### APPEARANCES

| | |
|---|---|
| For plaintiff Brandon Cleveland: | Monroe County Legal Assistance Corporation<br>Laurie M. Lambrix, Esq., of Counsel<br>80 St. Paul Street, Suite 700<br>Rochester, NY 14604<br>(585) 325-2520 |
| For plaintiff Isiah Jackson: | Mary Beth Feindt, Esq.<br>Law Office of Mary Beth Feindt<br>125 State Street<br>Rochester, NY 14614<br>(585) 262-2290 |
| For defendant Caplaw Enterprises | David Rothenberg, Esq.<br>Gieger and Rothenberg, LLP<br>800 Times Square Building<br>45 Exchange Street<br>Rochester, NY 14614<br>(585) 232-1946 |

      **SIRAGUSA, J.** This housing discrimination case has been brought under the Fair Housing Act, 42 U.S.C. § 3604(d) and 42 U.S.C. §§ 1981 and 1982. It is before the Court on defendant's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons stated below, the motion (# 3) is granted.

**FACTUAL BACKGROUND**

This case parallels another discrimination action brought by plaintiffs in this Court and naming as defendants LC Properties of Rochester ("LC"), the rental agent for Caplaw Enterprises ("Caplaw"); the owner of LC, Blaine Leipold ("Leipold"); Lou Thyroff ("Thyroff"), an employee of Carone Contracting, Inc., a corporation owned by Leipold; and one of Caplaw's partners, Charles Bisuito ("Bisuito"). In that lawsuit, which is still ongoing, the Court granted summary judgment to Bisuito. In that regard, the Court determined that Bisuito was not the owner of record of the property in question and that he had no personal involvement in the allegedly discriminatory rental decision. Rather, it was Caplaw, a general partnership, that owned 217 Alexander Street. *See* Decision and Order, *Cleveland v. Bischuto*, No. 03-CV-6334CJS (W.D.N.Y. Dec. 22, 2004). The subject lawsuit is based on a complaint that is virtually identical to the one filed in the earlier case. Here, plaintiffs allege, as they did in the other lawsuit, that LC agreed to rent to them an apartment at 217 Alexander Street, Rochester, New York, but then reneged when a long-term tenant in the building called LC's office and complained, referring to plaintiffs as black hoodlums. In the case at bar, plaintiffs proceed against Caplaw as owner of 217 Alexander Street on the theory that Caplaw is vicariously liable for the alleged discrimination carried out by its agent, LC.

**STANDARDS OF LAW**

*Judgment on the Pleadings*

Although plaintiffs refer to Federal Rule of Civil Procedure 56, Summary Judgment, in their memorandum of law in opposition to defendant's Rule 12(c) motion, the Court finds

it unnecessary to convert this motion. The complaint refers to the Property Management Agreement, upon which both parties rely in their arguments, and that agreement may be considered since it is referred to in the complaint:

> When material outside the complaint is presented to and not excluded by the court, "the motion shall be treated as one for summary judgment and disposed of as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion . . . ." FED. R. CIV. P. 12(b). For purposes of this rule, "the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*) (*quoting Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)); *see* FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Int'l Audiotext*, 62 F.3d at 72.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-153 (2d Cir., 2002).

In considering a motion for judgment on the pleadings or dismissal under Federal Rule of Civil Procedure 12, the defendants must show that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *H.J. Inc. v. Northwest Bell Telephone Co.*, 492 U.S. 229, 249 (1989). The Court must view the complaint and draw all reasonable inferences in the light most favorable to the non-moving party. *Id*.

*Fair Housing Act*

The Fair Housing Act, Pub.L. 90-284, Title VIII, § 800, as amended, makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status or national origin." 42 U.S.C.

§ 3604(a). Claims of housing discrimination are evaluated under the familiar *McDonnell Douglas*[1] burden-shifting framework. *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). The plaintiff has the initial burden of establishing a *prima facie* case of discrimination, which may be accomplished by showing: (1) membership in a protected class; (2) that the plaintiff sought and was qualified to rent the housing at issue; (3) that the plaintiff was rejected; and (4) that the dwelling remained available to other renters or purchasers. *Id*. Proving a *prima facie* case requires only a *de minimis* showing that there exists a triable issue of fact. *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65-66 (2d Cir. 1995) ("plaintiff's burden of proof in a ... discrimination action is de minimis at the prima facie stage, ...").

Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the challenged denial. *Id*. If the defendant produces admissible evidence that supports its legitimate, non-discriminatory reason for refusing to rent or sell the housing,

> "the McDonnell Douglas framework…disappear[s] and the sole remaining issue [is] discrimination *vel non*." *Reeves*, 530 U.S. at 142-43. The plaintiffs must then prove that the defendants intentionally discriminated against them on a prohibited ground. *See id*. at 143. Where, however, the plaintiffs "make a substantial showing" that the defendant' proffered explanation was false, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id*. at 146-47.

*Regional Economic Community Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 49 (2d Cir. 2002) (*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000)) (internal citations and quotations removed) (emphasis in original). Judgment is

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).

appropriate only where no reasonable jury could find that a defendant's conduct was motivated discrimination. *Mitchell*, 350 F.3d at 47; *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000).

### *Sections 1981 & 1982*

Section 1981 prohibits discrimination in the making and enforcing of private contracts. 42 U.S.C. § 1981 (2004). Section § 1982 prohibits private racial discrimination in the sale and rental of real and personal property. 42 U.S.C. § 1982 (2004). Claims under these statutes are also evaluated under the *McDonnell Douglas* shifting burden test. *See Mitchell*, 350 F.3d at 47. With regard to these two sections, the Second Circuit has written, "[w]e emphasize that an essential element to each cause of action is a requirement that the alleged discrimination took place because of the individual's race." *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (evaluating a claim under § 1981).

### *Agency*

Determining the existence of agency is a mixed question of law and fact. *Cabrera v. Jakabovitz*, 24 F.3d 372, 385 (2d Cir. 1994). As the Second Circuit observed in that case,

> A determination that an agency relationship exists requires the application of a legal standard to a set of historical facts. "Agency is a legal concept which depends upon the existence of required factual elements: the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1 cmt. b (1958). Unless the facts are insufficient to support a finding of agency or there is no dispute as to the historical facts, the question of agency should be submitted to the jury so that it may apply the applicable

legal standard, as set forth in the instructions, to the facts, as the jury finds them.

*Cabrera*, 24 F.3d at 386. Another treatise, quoted by the Second Circuit, explained the issue this way:

> Agency is a question of fact to be determined by the jury or other trier of facts unless no competent evidence legally sufficient to prove it has been introduced or the material facts from which it is to be inferred are undisputed and only one conclusion can be reasonably drawn therefrom. . . . On the other hand, agency is a question of law for the court where the material facts from which it is to be inferred are not in dispute, the question of agency is not open to doubt, and only one reasonable conclusion can be drawn from the facts in the case.

*Cabrera*, 24 F.3d at 386 n.14 (quoting 3 C.J.S. Agency § 547 (1973) (footnotes omitted)). New York courts have held that "when . . . the facts are not disputed, the question of agency should be resolved by the court." *Plymouth Rock Fuel Corp. v. Leucadia, Inc.*, 100 A.D.2d 842, 842 (N.Y. App. Div. 2d Dept.1984) (citation omitted). However, "[i]n order to avoid predicating liability for Title VIII[2] violations on the vagaries of state law, the question whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law." *Cabrera*, 24 F.3d at 386.

Under Federal law, the elements of agency are: (1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; and (4) control by the principal. H.G. Reuschlein and W.A. Gregory, Agency and Partnership 11 (1979). The element most essential to the demonstration of any agency relationship is that of control. *Id.*; *Boss v. International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers*, 567 F.

---

[2]Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601-19.

Supp. 845, 847 n.1 (N.D.N.Y. 1983) (citations omitted). To establish the existence of an express or implied agency, a plaintiff must show the following required factual elements: "[1] the manifestation by the principal that the agent shall act for him, [2] the agent's acceptance of the undertaking and [3] the understanding of the parties that the principal is to be in control of the undertaking." Restatement (Second) of Agency § 1 cmt. b (1958) (*quoted in Cabrera*, 24 F.3d at 386); *see also Flame Cut Steel Products Co., Inc. v. Performance Foams & Coatings, Inc.*, 46 F. Supp. 2d 222, 228 (E.D.N.Y. 1999) (agency can be express, implied or apparent). "Authority that is express or implied arises from a manifestation of consent from principal to agent. Such consent can be either express or implied from the parties' words and conduct as construed in light of the surrounding circumstances.'" *Flame Cut Steel Prods. Co.,* 46 F. Supp. 2d at 228 (citations and internal quotes omitted).

Agency can also be based on a theory of apparent authority. Apparent authority can exist where "words or conduct *of the principal*, communicated to a third party, . . . give rise to the appearance and belief that the agent possess authority to enter into a transaction." *Flame Cut Steel Products*, 46 F. Supp. 2d at 228 (emphasis added). As the Second Circuit has explained:

> Apparent authority is "entirely distinct from authority, either express or implied," [Restatement (Second) of Agency] § 8 cmt. a [(1958)], and arises from the "written or spoken words or any other conduct of the principal which, reasonably interpreted, causes [a] third person to believe that the principal consents to have [an] act done on his behalf by the person purporting to act for him," *id*. § 27; *see also Fennell v. TLB Kent Co.*, 865 F.2d 498, 502 (2d Cir. 1989). Apparent authority, then, is normally created through the words and conduct of the principal as they are interpreted by a third party, and

cannot be established by the actions or representations of the agent. *See Fennell*, 865 F.2d at 502 (collecting cases).

Moreover, a principal may be estopped from denying apparent authority if,

> (1) the principal's intentional or negligent acts, including acts of omission, created an appearance of authority in the agent, (2) on which a third party reasonably and in good faith relied, and (3) such reliance resulted in a detrimental change in position on the part of the third party. *See* Restatement [(Second) of Agency] § 8B; *Masuda v. Kawasaki Dockyard Co.*, 328 F.2d 662, 665 (2d Cir. 1964).

*Minskoff v. American Express Travel Related Servs. Co.*, 98 F.3d 703, 708 (2d Cir. 1996).

## DISCUSSION

In the previous lawsuit, plaintiffs contended that even though Bisuito, one of Caplaw's partners, did not own the building, and did not participate in, or have any knowledge of the rental transaction, he nonetheless was vicariously liable since Caplaw hired LC to manage the building owned by the partnership. Caplaw signed a Property Management Agreement[3] with LC to manage, operate, service and maintain the Alexander Street property. (Compl. ¶ 40; Ans. ¶ 5.) Included among the duties assumed by LC was the following: "[LC] will advertise the property and be the exclusive agent for leasing both commercial and residential space." (Property Management Agreement ¶ 5.) In support of their proposition in the earlier lawsuit that Bisuito was liable, plaintiffs cited *Meyer v. Holly*, 537 U.S. 280, 285 (2003). In this case plaintiffs again cite to *Meyer* in their

---

[3]Both parties have referred to the Property Management Agreement in their memoranda, and, in addition to referring to the agreement in their complaint, plaintiffs have included a copy of it attached as Exhibit A to the Lambrix declaration (Docket No. 6).

memorandum of law opposing judgment on the pleadings. However, the Court disagrees with plaintiffs' position.

In *Meyer*, the Supreme Court held that the common law rules of vicarious liability apply to actions under the Fair Housing Act. *Id*. at 285. However, the Court cautioned that, "the relevant principal/agency relationship demands not only control (or the right to direct or control) but also 'the manifestation of consent by one person to another that the other shall act *on his behalf*…, and consent by the other so to act.' (Emphasis added.) A corporate employee typically acts on behalf of the corporation, not its owner or officer." *Meyer*, 537 U.S. at 286 (*quoting* Restatement (Second) of Agency § 219(1) (1957)).

In addition to Meyer, plaintiffs also rely on *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) in support of their argument that Caplaw is vicariously liable for any alleged discrimination carried out by LC. In that case, the Second Circuit affirmed jury verdicts holding the landlords liable for the discriminatory acts of their agent, AM Realty. *Id*., at 379. However, that case is factually distinguishable from the one at bar. In *Cabrera*, the trial testimony established that the landlords "controlled AM Realty's activities in referring candidates for [the] apartments. Both landlords had the power to deny further listings to AM Realty if the brokerage referred unacceptable applicants for the apartments." *Id*., at 387. Further, the landlords in *Cabrera* either met with prospective tenants, or at least, "dictated the qualifications for prospective tenants, and conditioned the realtor's receipt of future apartment listings on its abiding by the landlords' specifications." *Id*., at 387.

In contrast, the allegations here are that defendant turned over the entire management of the rental property to LC. Plaintiffs do not allege, nor does the agreement

between Caplaw and LC suggest, that defendant retained the requisite control over the rental process to subject it to liability under the holdings in *Cabrera* and *Meyer*.

The Court's conclusion in this regard is supported by the Second Circuit's decision in *Mitchell v. Shane*, 350 F.3d 39 (2d Cir. 2003). There, the court determined that the property owners were not vicariously liable for the alleged discrimination by their real estate agent, since they were in another state at the time of the alleged discrimination and had no idea of the race of the rejected buyers until after they had already accepted another offer. The Second Circuit, in upholding the grant of summary judgment to the owners, said, "[t]he plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination; without some evidence of knowledge of the prospective buyers' racial identity, it is impossible to infer such motivation." *Id*., at 49. Paragraph 40 of the subject complaint, which pertains to Caplaw Enterprises, states only that;

> LC Properties, Blaine Leipold and Lou Thyroff acted as agents for Caplaw Enterprises, owner of the Alexander Street property, at all times relevant to this lawsuit, pursuant to a Property Management Agreement, executed in February of 2002, for a term of two years, appointing LC Properties and its employees as managing agents of the property.

(Complaint ¶ 40.) The complaint does not allege, and the Property Management Agreement does not provide, that Caplaw Enterprises had, or was to have, any knowledge of the prospective renters' racial identity. The Property Management Agreement made LC the "sole tenant contact" and the "exclusive agent for leasing both commercial and residential space." (Agreement at 2.) Unlike the cases relied upon by plaintiff, the agreement here did not require Caplaw Enterprises' approval to rent the apartment.

## CONCLUSION

Accordingly, the Court grants defendant's motion (# 3) for judgment on the pleadings. The Clerk shall enter judgment for defendant.

SO ORDERED.

DATED:   July 25, 2005
             Rochester, NY

                    ENTER:

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge